## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JENARIUS BROWN** | **CIVIL CASE NO. 25-1146** |
| **VERSUS** | **JUDGE EDWARDS** |
| **DEDRICK MIRE, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING AND ORDER

Before the Court are two motions. The first is a Motion for Judgment on the Pleadings (R. Doc. 23) filed by Dedrick Mire ("Major Mire"), Ernest Charrier ("Sergeant Charrier"), Justin Corley ("Sergeant Corley"),[1] Dustin Dauzat ("Dauzat") and the State of Louisiana through the Department of Public Safety and Corrections ("DPSC") (collectively, "Defendants"). Jenarius Brown ("Plaintiff") opposes the motion (R. Doc. 25). The time for filing a reply has run, *see* R. Doc. 24, and accordingly, the motion is ripe. The second motion is a Motion for Partial Summary Judgment (R. Doc. 26) filed by Plaintiff. Defendants oppose the motion (R. Doc. 28). Plaintiff replied (R. Doc. 29).

After careful consideration of the parties' memoranda and the applicable law, Defendants' Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

---

[1] Initially filed suit against Sergeant Quintell Woods. *See* R. Doc. 1. However, Plaintiff's Motion to Amend the Complaint states that Sergeant Woods changed his name to Justin Corley. *See* R. Doc. 9 at 1. Accordingly, the Court will refer to the defendant as "Sergeant Corley."

## I.    BACKGROUND

This case stems from Plaintiff's allegations that several correctional officers physically assaulted him while he was an inmate at Raymond Laborde Correction Center ("RLCC"). According to Plaintiff, on September 2, 2024, Major Mire, Sergeant Charrier, and Sergeant Corley attacked Plaintiff while he was fully restrained. *See* R. Doc. 11 at 4. Plaintiff also alleges that he was maced by Dauzat. *See id.* Because of this alleged incident, Plaintiff asserts that he "submitted multiple timely" internal, written grievances—referred to as "ARPs"—in accordance with Louisiana's Administrative Remedy Procedure. *See* R. Doc. 26-3 at 1. And on October 10, 2024, Sergeant Charrier  threatened him, Plaintiff says, for submitting these grievances. *See* R. Doc. 11 at 4. Plaintiff then claims to have submitted ARPs relating to that incident as well.

However, Plaintiff claims that his ARPs were never processed. *See* R. Doc. 26-3 at 1. Plaintiff asserts that his ARPs "were either returned to [him], destroyed[,] or ignored." *See id.* On the other hand, Defendants—through the affidavit of Diane Williams ("Williams"), the Classification Manager at RLCC—assert that Plaintiff never filed any ARPs pertaining to these incidents. *See* R. Doc. 28-2.

Before filing suit, Plaintiff wrote to Williams inquiring into the status of his ARPs related to the September 2, 2024, incident. *See* R. Doc. 26-3 at 41–42. Williams responded that he had withdrawn the ARPs, numbered "RLCC-2024-447" and "RLCC-2024-509." *See id.* at 42. But, according to Plaintiff, neither of those ARPs relate to the incident on September 2, 2024. *See id.* at 41–42. Because RLCC did not

2

process his ARPs, Plaintiff attempted to appeal directly to the DPSC headquarters, but "the ARP/letter was intercepted by RLCC staff." *See id.* at 1.

On June 30, 2025, Plaintiff filed suit against Defendants in the 12th Judicial District Court of Avoyelles Parish, Louisiana. *See* R. Doc. 1 at 1. The DPSC subsequently removed the case to this Court on August 9, 2025. *See id.* On August 29, 2025, Plaintiff filed an Amended Complaint against Defendants alleging claims under 42 U.S.C. § 1983 against Major Mire, Sergeant Charrier, Sergeant Corley, and Dauzat for violations of his Eighth Amendment rights and negligence. *See* R. Doc. 11. He also alleges that the DPSC is liable for his injuries under the theory of *respondeat superior*. *See id.*

## II.     STANDARDS OF REVIEW

### a.  Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990). Motions for judgment on the pleadings are "subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 209 (5th Cir.2009). Thus, usually, the inquiry on a 12(c)

motion "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Id.* (quotations omitted).

When ruling on a 12(c) motion requires a court to look outside the pleadings, the motion is converted to one for summary judgment. Fed. R. Civ. P. 12(d). Because all parties have submitted matters outside of the pleadings and Defendants' affirmative defense requires the Court to consider facts outside the pleadings, Defendants' Motion must be treated as a motion for summary judgment. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) ("We ... conclude that when courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56. Consequently, we find that the district court did not err in converting Appellees' motion into a motion for summary judgment under Rule 12(d).").

### b. Summary Judgment

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the Court "may not make credibility determinations or weigh

4

the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

### III.    ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"): "No action shall be brought with respect to prison ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. The petitioner must have "pursue[d] the grievance remedy to conclusion"—substantial compliance with administrative procedures is not enough. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Because exhaustion of

remedies is an affirmative defense, defendants bear the ultimate burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Further, "[s]ince exhaustion [of administrative remedies] is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, … judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon,* 596 F.3d at 272 (citation and footnote omitted).

Louisiana's Administrative Remedy Procedure has two steps, and a prisoner has not exhausted his remedies until he has completed both. *See id.* at 265–66. At step one, a prisoner submits a request to the warden briefly setting out the basis for the claim and the relief sought. *See* La. Admin. Code tit. 22, pt. I, § 325(G)(1). The grievances are screened by an ARP screening officer prior to assignment to the first step. *See id.* at § 325(I)(1). The ARP screening officer must provide notice to the offender that his ARP is either being accepted and will be processed, or being rejected and will not be processed until any noted deficiency is corrected. *See id.* § 325(I)(1)(a)(i)-(ii). The grievance letter should be written within 90 days of the alleged event that is the subject of the complaint. *See id.* at § 325(G)(1). The Warden has 40 days from the day the grievance is received to respond to the request. *See id.* at § 325(J)(1)(a)(ii).

The inmate may proceed to the second step of the ARP by appealing to the Secretary of the DPSC if he or she is dissatisfied with the Warden's response. *See id.* at § 325(J)(1)(b)(i). If the inmate never receives a response to a first step grievance, then he or she is entitled to proceed to the second step of the process upon the

expiration of the first-step response time limit. *See id*. at § 325(J)(1)(c). If the inmate is not satisfied with the second-step response, he or she may then file suit in district court. *See id*. at § 325(J)(1)(b)(iv).

Here, Defendants have put forth Williams' affidavit as evidence that Plaintiff has not exhausted his administrative remedies. *See generally* R. Doc. 28-2. In the affidavit, Williams states that she has reviewed all existing ARP records for Plaintiff, and "[n]o ARPs were filed by [Plaintiff] pertaining to the incident he alleges occurred on September 2, 2024…." *See id*. at 1. And Plaintiff's own evidence shows that he was aware of the administrative grievance process and pursued it on other occasions.

Here, Plaintiff has provided as evidence numerous ARPs he claims that he submitted. *See generally* R. Doc. 26-3. Also included in those documents attached by Plaintiff, is a notice from the screening officer showing that an ARP submitted by Plaintiff had been accepted, and the Warden's Office would issue a response within 40 days. *See id*. at 7 & 40. However, by Plaintiff's own admission, that ARP—RLCC-2024-509—"had nothing to do with the incident[s]" on September 2, 2024, and October 10, 2024. *See id*. at 41. Nevertheless, Plaintiff's own evidence shows that he did have access to the administrative remedy process and was able to successfully submit other ARPs, and the Williams declaration shows that RLCC has no record of Plaintiff doing so for the complained of incident. Accordingly, Defendants met their burden of showing that Plaintiff did not exhaust his administrative remedies before filing suit.

However, Plaintiff can avoid the exhaustion requirement if he can show that the remedy was "unavailable." Even where such an administrative remedy process theoretically exists and applies, however, the Supreme Court has recognized three situations in which an administrative remedy is *de facto* unavailable and, thus, exhaustion is not required: (1) where the process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the process is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). But the Fifth Circuit has explained that "[e]xceptions to the exhaustion requirement apply only in 'extraordinary circumstances,' and [the plaintiff] bears the burden of demonstrating the futility of administrative review." *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)); *see Amos v. Cain*, No. 20-7, 2021 WL 1080518, at *7 (N.D. Miss. Mar. 19, 2021) (explaining that the "defendants have shown that [plaintiff] failed to exhaust a generally available remedy" through a declaration stating that none of the plaintiffs "submitted a grievance related to any claim at issue here, much less pursued such a claim to conclusion," and that, thereafter, "the burden shifts to the plaintiffs to show that the generally available remedy was, in fact, unavailable").

Plaintiff contends that the second step was not available to him until the prison responded to his first-step grievance. *See* R. Doc. 29 at 3–4. According to Plaintiff, by

"refusing to process the ARP, [RLCC] blocked [Plaintiff] from advancing to Step Two." *See id.* at 3. That is incorrect. As the Fifth Circuit has explained, "a prisoner who does not receive a timely response to his initial ARP is not prevented from filing a second-step ARP." *See Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) (citing *Dillon*, 596 F.3d at 266 and La. Admin. Code tit. 22, pt. I, § 325(J)(1)(c) ("expiration of response time limits shall entitle the offender to move on to the next step in the process.")); *see also Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015) ("[T]he prison's failure to timely respond simply entitles the prisoner to move on to the next step in the grievance process.").

Plaintiff seemed to be aware of this because his Amended Complaint states that he "has appealed to the [DPSC] headquarters in Baton Rouge to attempt to have his ARP processed to the second step." *See* R. Doc. 11 at 2. However, in his declaration, Plaintiff claims that "the ARP/letter was intercepted by RLCC staff." *See* R. Doc. 26-3 at 1. But Plaintiff's claim that the letter was intercepted by RLCC staff is not substantiated by the record. Plaintiff cites to pages 78 and 79 of his attached exhibit as evidence that RLCC staff, specifically Williams, prevented Plaintiff from submitting his appeal to DPSC headquarters. *See* R. Doc. 26-4 at 2. However, Plaintiff's attached exhibit is only 61 pages long. *See* R. Doc. 26-3. And Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and ... articulate the 'precise manner' in

9

which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). Plaintiff failed to do so here.

Further, to the extent that Plaintiff did attempt to proceed to the second step, he makes no claim that he did so in a timely manner. The record includes a letter from Plaintiff's counsel that indicates counsel received copies of seven ARPs from Plaintiff on October 18, 2024. *See* R. Doc. 26-3 at 2. Of those ARPs, the most recent one is dated October 13, 2024. *See id.* at 55. Based on Louisiana's Administrative Remedy Procedure, no more than 90 days from the initiation (submitting the ARP) to completion shall elapse. *See* La. Admin. Code Tit. 22, Pt. I, § 325(J)(1)(c) ("No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted."). So, giving Plaintiff the full benefit of the doubt, he had at most 90 days from October 13, 2024, to submit his appeal to the DPSC, or until January 12, 2025. But Plaintiff's attached exhibits are devoid of facts indicating that he sent—or attempted to send—his appeal to the DPSC by that date. In fact, the only date on the letter he sent to his counsel claiming that RLCC staff intercepted his appeal to the DPSC is the date that the letter was received by his counsel's office on July 3, 2025, well after the 90-day period limit. *See* R. Doc. 26-3 at 57. Thus, Plaintiff is unable to show that he proceeded to the second step of Louisiana's Administrative Remedy Process in a timely manner.

Because Plaintiff has not shown through competent summary judgment evidence that RLCC staff prevented him from submitting his appeal to DPSC

headquarters or that his appeal was made in a timely manner, he has not met his burden of showing that the administrative remedy was unavailable to him. As such, he failed to exhaust the required administrative remedies before bringing this suit while incarcerated. Accordingly, Plaintiff's suit is dismissed without prejudice. *Bargher*, 928 F.3d at 447 ("Failure to exhaust … warrants dismissal without prejudice ….").

## IV.   CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (R. Doc. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings (R. Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** this 17th day of July, 2026.


_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

11